THE STATE OF NEBRASKA, EX REL. R. D. STEARNS, v. R. H. CORNER, W. M. GILLESPIE, M. D. TIFFANY, AND E. C. WIGGENHORN.

1. **Constitutional Law:** REGISTRATION OF VOTERS. Under the constitution of the state of Nebraska, which prescribes the qualifications of voters, and provides that all elections shall be free, and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise, a registration law which absolutely deprives an elector of the right to vote unless registered on one of four days, the last one being ten days prior to the election, is void.

2. ———: ———. A registry law, so far as it provides for a register of qualified electors to be made, and which constitutes such registration one mode of proof of the elector's right, and so far as it might require an elector whose name is not upon such register to make other reasonable proof of his right to the judges of election at the time of offering his vote, would be valid. But where it absolutely deprives the elector of his vote unless previously registered upon certain days named in the law, it is void.

3. ———: ———. A registry law, to be valid, must be reasonable and impartial, and calculated to facilitate and secure the constitutional right of suffrage, and not to subvert, or injuriously, unreasonably, or unnecessarily restrain, impair, or impede the right. *Vide Daggett v. Huston*, 43 Ohio St. Rep., 548.

4. ———: ———. The act "to amend the election laws for metropolitan cities and cities of the first class in the state of Nebraska" (Laws 1887, 394), being in contravention of that clause of the constitution that "no bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed," is void.

ORIGINAL action in the nature of *quo warranto* to test the right of respondents to hold offices as judges of election in the fourth ward of the city of Lincoln under the provisions of Laws 1887, Ch. 39.

*C. O. Whedon* and *Harwood, Ames & Kelly*, for relator.

*Billingsley & Woodward*, for respondents.

REESE, J.

The question presented in this cause is the constitutionality of chapter 39 of the session laws of 1887 (Compiled Statutes 1887, Ch. 26a). The principal contention is, that the act violates the provisions of section 22 of the bill of rights, article 1 of the constitution of this state. This section is as follows: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qual-

ified voter to exercise the elective franchise." The act in question consists of 82 sections, and cannot be set out without extending this opinion to an unreasonable length, however desirable it might be to do so. We therefore must be content to refer to what may seem to be the more objectionable sections, as briefly as may be, yet giving them such consideration as the importance of the question requires.

The title of the act in question is, "An act to amend the election laws for metropolitan cities, and cities of the first class in the state of Nebraska."

So far as the subject of registration is concerned it must be sufficient to say that it is made the duty of the city council of cities of the class named in the act to appoint four judges of election and two poll clerks for each election district, in the month of September of each year, the officers so appointed to hold their offices for the term of one year, unless sooner removed by the mayor. The judges of election shall constitute the board of registration, each one of whom shall be provided with a register. They shall meet together and organize as such board and register such electors of the election district as may personally appear for that purpose on the following days, and *then only*, to-wit: On Tuesday four weeks, the Wednesday of the third week, and Friday and Saturday of the second week preceding the day of the November election in each year. No person shall be registered except those who personally present themselves for that purpose, and to all such an oath must be administered to truly answer such questions as may be put to them touching their place of residence, name, place of birth, qualifications as an elector, and right to register and vote.

The examination resulting in favor of the applicant, his name is entered upon each of the four registers, the proper memorandum being made in the several columns thereof. On each day of general registration, and before adjourning,

the board is required to " enter in each of two books pre-
pared for that purpose, one of which shall be known as
the public copy of the registers, and the other of which
shall be known as the election bureau copy of the regis-
ters, all such names and residences, and all such dates, in-
formation, and statements as during the day have been en-
tered by the judge of election in the registers provided for "
by the act.   " The whole six books shall, on each of said
days, after a completion of such copies of the registers, be
carefully compared throughout, so that each of the registers
and copies thereof shall in every respect agree with each
other, and contain the name and residence of each person
who shall have applied for registration, and the fact re-
specting him, as the same shall have been stated by him
and entered in their registers."   The time in which the
board may be in session each day is from eight o'clock in
the morning until nine o'clock in the evening.   " For all
powers, authority, and duties " prescribed, and " all actions
of the board, or of said judges, save where such authority
is specifically allowed to each of said judges, the concur-
rence or assent of a majority of all the judges of election
in any election district, must in all cases be obtained."
Section twenty-four of the act contains the following pro-
vision:   " The judges of election in each election district
of the city shall, on the day of any election therein, have
with them, at the polling place in said district, the reg-
isters provided for in this chapter. , They shall each make
use of one of said registers for guidance on said day, and
no vote shall be received from any person whose name
shall not be found by at least three (3) of them, to be
upon at least three (3) of said registers as a qualified voter.
The chairman of the judges in such election district shall,
if present, and if absent, then one of the other judges,
shall, upon any person offering to vote, announce in a loud,
clear, and distinct manner the name of such person, and
no ballots shall be received by either of the judges and de-

posited in any of the ballot boxes, until at least three of said judges shall, as hereinbefore provided, have examined and found the name of such person, and have declared the same, and that such person is entered as a qualified voter, when, if the vote of such person is received, at least three of the judges shall write in the appropriate column, bearing the heading 'voted,' and opposite the name of such person, the word 'yes.' "

By the foregoing it will be seen that the right of any elector to vote must depend upon his registration within the four days set apart for that purpose, and upon the further fact that on election day his name must be found by at least three of the judges upon three of the registers. If not registered *on one of those days*—no matter what may have prevented—he can not vote. If he has registered and by mistake his name has been left off two of the registers, he is equally disfranchised. He cannot register, nor can the registry be corrected on election day.

We enter upon the examination of the question involved in this case with a full appreciation of its gravity and of the reluctance of courts to set aside the acts of the legislature as unconstitutional, and are mindful of the well established rule, that a law will be upheld if it can without doing violence to the fundamental law ; yet it is a judicial duty, and one from which we cannot escape, to carefully consider the question, and if the act is in violation of the constitution to so declare it.

Section 1 of article VII. of the constitution—entitled Rights of Suffrage—provides that every male person of the age of twenty-one years, of the classes enumerated, "shall be an elector," and, of course, entitled to vote. Would the act in question hinder or impede the exercise of that right? This question is not a new one in this country, and the decisions of courts of last resort in the different states have been substantially unanimous in holding such laws absolutely void. It has been quite as uni-

formly held that proper and reasonable registration laws are valid, not as imposing an additional necessary *qualification*, created by statute, but as a method of *proving* the existence of the qualifications required by the constitution. This, so long as kept within the bounds of reason, is deemed to be a proper and just protection against fraud, and a preservation of the purity of elections, upon which must depend the safety and perpetuity of republican forms of government.

In *Dells v. Kennedy*, 49 Wis., 555, it was held by a majority of the court that where an elector possessed the qualifications prescribed by the constitution as an elector, he was vested with the constitutional right to vote, and that it was not within the power of the legislature to change, impair, add to, or abridge it in any respect, and that an act which provided that no vote should be received at any general election, unless the name of the person offering to vote be on the register previously completed by a board of registry, was void. The same in substance was declared to be the law in *The State v. Baker*, 38 Id., 71.

In *Daggett v. Hudson*, 43 Ohio St., 548, the same question was before the supreme court of Ohio, and the same conclusion was reached, after a careful examination and collation of the decisions of the supreme courts of the various states, in an exhaustive opinion written by Judge Atherton. Among the cases examined as sustaining the decision of that court were: *Page v. Allen*, 58 Pa. St., 338; *Dells v. Kennedy, supra; State, ex rel. Wood, v. Baker*, 38 Wis., 71; *Edmonds v. Banbury*, 28 Iowa, 267; *Monroe v. Collins*, 17 Ohio St., 666; and to which we may add *White v. The County of Multnomah*, 10 Pac. R. (Or.), 484. Some of the cases cited go to the extent of holding that any law requiring the registration of voters is void, as hindering and impeding the exercise of the elective franchise, but we are quite well convinced that such holding is clearly at variance with reason and the weight of authority. The

true rule undoubtedly is, that the legislature may require registration under reasonable restrictions as proof of the possession of the qualifications prescribed by the constitution, but that the voter shall have the right to prove himself to be an elector, register and vote at any time prior to the closing of the polls on election day. It would doubtless be competent to require more proof on that day than if the voter had previously registered, but it should be left within his power to furnish such proof, if it existed, and exercise his right. As said in some of the decisions referred to, the fact that the name is not on the register is a challenge by statute of the person offering the vote, and that challenge should be overcome by proof. But this is not the case before us. By the act under consideration but four days in the year are given to register, and then only when three of the judges of election are present. It matters not how imperative the demands of the voter elsewhere during those four days may be, or whether his absence is enforced by sickness of himself or family, or unavoidable detention from the voting district in which he may reside, he is disfranchised. Furthermore, he may appear before the judges for the purpose of registration, and, although he may have been a resident and voter in the election district for a quarter of a century, take the required oath, answer the questions propounded, in short, comply with the requirements of the law in every particular; yet, if on election day his name is not found on *three* of the four registers, his vote cannot be received. The suggestion that such a law would not be a "hindrance or impediment to the right of a qualified voter to exercise the elective franchise," as is forbidden in the section of the constitution above quoted, is so manifestly unreasonable that the necessity for further argument ceases.

There are other considerations presented affecting the constitutionality of the act in question, which we deem it necessary to notice briefly.

The first section is clearly amendatory of section 8 of chapter 41 of the Compiled Statutes of 1885. By that section certain days are declared to be public holidays to be observed in the matter of the presenting and protesting of commercial paper. The section under considera- tion amends that section by adding to the days named the days upon which general or local elections shall be held in the cities named; yet no reference is made to the section amended as required by section 11 of article III. of the constitution. Applying the rule stated in *Smails v. White,* 4 Neb., 353, there would seem to be an infraction of the constitution in this particular.

Section 247 of the criminal code defines the terms "felony" and "misdemeanor" to be, that a felony is such an offense as may be punished by death or imprisonment in the penitentiary, and "any other offense is a misdemeanor;" while sections 68, 70, and 71 of the act under considera- tion seem to ignore this section, and declare persons con- victed of the offenses mentioned guilty of a *misdemeanor,* but fix the punishment at confinement in the penitentiary.

The act is quite crude, and it would be quite impracti- cable, if not impossible, to comply with many of its pro- visions.

By section 3 of the act to incorporate metropolitan cities, it is provided that such cities may include an area not to exceed twenty-five square miles, including any township or village organization within such limits, which organ- ization shall thereupon terminate. This must necessarily include territory remote from the business center of the city where large buildings, telegraph stations, etc., could not be found, but the act requires that no place shall be designated by the mayor as a place for holding elections which will not provide an unoccupied space allowed in front of the ballot boxes, which shall be equivalent to "forty feet square," sixteen hundred square feet. A pa trolman shall carry the result of the election, as found by

the canvass, "to the police headquarters where the polling is located; and the captain or sergeant or other officer in charge shall immediately transmit by telegraph or otherwise, the result of such statement to the city council."

By section 57 a number of acts and omissions are declared to be illegal, and it is declared that if any person shall aid, counsel, or advise the commission of any act forbidden by law or by the act (many of which are simple misdemeanors of the lower class), or shall omit to do an act required by law to be done, the party guilty of the act or default shall be adjudged guilty of a felony, and committed to the penitentiary for a term not less than one nor more than five years. All the expenses of an election in any *county* are declared to be a *city* charge, by the eighty-first section of the act.

These provisions (and many others which might be cited) are noticed for the purpose of calling attention to the fact that in its passage the act has not received the care which should be given to the enactment of laws. From a comparison with the election law of the state of New York applicable to the city of New York, it is plain that the act in question has been created by a somewhat random selection of sections from that law without any reference to their adaptability to the laws and constitution of this state or our system of government, and hence is almost, if not entirely, incapable of enforcement.

The act being unconstitutional, the prayer of the petition is granted.

JUDGMENT ACCORDINGLY.

THE other judges concur.