## SIMMONS *v.* BYRD ET AL.

[No. 24,118.   Filed June 23, 1922.]

1. CONSTITUTIONAL  LAW. — *Constitutional  Provisions.* — *Construction.*—*Majority of Electors.*—Article 16, §1, of the Constitution, authorizing the adoption of amendments and requiring that an amendment be ratified by a majority of the electors of the state, means a majority of the electors who vote at the election at which an amendment is submitted for ratification, and an amendment of Art. 2, §2, of the Constitution which excluded from that section the words "if he shall have been duly registered according to law," having received a majority of the votes cast at the special election at which it was submitted, was properly adopted, regardless of the fact that there may have been a much greater number of qualified electors in the state than the number of those who actually voted at the special election. p. 278.

2. ELECTIONS.—*Registration of Voters.*—*Power of Legislature.* —*Constitutional Provisions.*—Article 2, §14, of the Constitu-

tion, providing that the "general assembly may provide by law for the election of all judges of courts of general and appellate jurisdiction by an election to be held for such officers only; and shall also provide for the registration of all persons entitled to vote," means the registration of persons entitled to vote at all elections, and not merely at elections for judges, in event they are elected separately, and the legislature has the power, under such constitutional provision, to enact a law providing for the registration of voters at all elections, provided the law does not violate other constitutional provisions, notwithstanding the amendment of Art. 2, §2, striking therefrom the words "if he shall have been duly registered according to law." p. 281.

3. ELECTIONS.—*Registration of Voters.—Power of Legislature. —Constitutional Provisions.*—Under Art. 2, §14 of the Constitution, and in view of §1 of that article, providing that all elections shall be free and equal, the legislature has power to provide by law for the registration of voters, and to exclude from the privilege of voting those persons who refuse or neglect to register a reasonable number of days before the election, as provided by §6977x2 *et seq.* Burns' Supp. 1921, Acts 1919 p. 736, §6977f3 Burns' Supp. 1921, Acts 1920 (Spec. Ses.) p. 38 and §6977w3 *et seq.* Burns' Supp. 1921, Acts 1921 p. 846, and such laws are not in conflict with Art. 2, §2, of the Constitution, enumerating the qualification of voters, notwithstanding the amendment of that section by striking out the words "if he shall have been duly registered according to law." p. 283.

4. ELECTIONS.—*Registration of Voters.—Statute.—Validity.— Constitutional Provisions.*—The Constitution requires (Art. 2, §2) that all persons shall reside in the precinct thirty days before they can vote therein, and the provision contained in the registration laws that voters shall register twenty-nine days before the election is not such an abuse of the legislative discretion that the courts can declare such laws void. p. 286.

From Wells Circuit Court; *Frank W. Gordon,* Judge.

Action by Abram Simmons against John A. Byrd and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Abram Simmons* and *Charles G. Dailey,* for appellant.
*U. S. Lesh,* Attorney-General, *Virgil M. Simmons* and *W. H. Eichhorn,* for appellees.
*George H. Batchelor, Amicus Curiae.*

EWBANK, J.—The sole question presented by the record and discussed in the briefs of counsel is whether or not the several laws enacted by the legislature of Indiana requiring voters to register before taking part in elections were made unconstitutional and void by the amendment of Art. 2, §2, of the Constitution of Indiana on September 6, 1921. Appellant filed his complaint as a citizen, qualified voter and taxpayer, on behalf of all taxpayers of the State of Indiana, against the appellees, as public officers charged with duties under the provisions of the registration laws, seeking to enjoin appellees from doing any acts or incurring any expense under said laws, in the registration of the voters of Wells county, Indiana, where all the parties reside.. The circuit court sustained a demurrer to appellants' complaint and he appealed, and has assigned that ruling as error.

The statutes thus attacked provide, in substance, as follows: (a) That no person may vote at any general election unless registered; (b) that the expenses of registration shall be paid out of the county treasury; (c) that precinct boundaries shall be established in March before the election; (d) that five days before the first date for registration an inspector and two clerks shall be appointed in a manner as stated; (e) that they shall hold a regular session on the fifty-ninth day before the election, and again on the twenty-ninth day before the election at a suitable room in the precinct, provided by the county board of commissioners, of which notice shall be given by publication and posting; (f) that blanks with spaces for the residence, age, where born, when arrived in the United States, when and where declared intention, and when and where naturalized, shall be furnished by the county auditor, and also blank books in which to record the names of persons registered, with such information concerning each of them; (g) that the

registration blanks shall be distributed to the voters for use by them; (h) that every person residing in a precinct on the registration date, who will be qualified to vote if he continues to reside there until election day shall be entitled to register, but no one else; (i) that the board shall keep open from 8:00 a.m. until 9:00 p.m. each of the two registration days; (j) that an applicant for registration, in person, may present his application, duly filled out and signed by such applicant, or duly attested by a person who knows him, if he signs by a mark, or (k) he may cause his application, so prepared and signed, to be delivered to the board on a registration day, by a voter of the precinct in which he resides, or (l) may mail it to the auditor of the county, to be by him delivered to the registration board; and (m) provision is made for transferring to the registration books of the proper precinct any names registered in the wrong precinct by mistake; (n) that a person offering to vote has not registered is made grounds for challenge, when the person challenged shall not be permitted to vote until he makes affidavit that he is the identical person registered under the name in which he offers to vote, and if his name is not on the registry his vote shall not be received even though he be not challenged; (o) after once registering a voter need not register again so long as he lives in the same precinct, and has not been disfranchised, unless a new registration is petitioned for by 300 resident freehold voters; (p) the county auditor and election officers being charged with certain duties in the matter of striking off the names of persons who have died or been disfranchised, or of whose removal from the precinct they receive information, verified by affidavit. §6977x2 *et seq.* Burns' Supp. 1921, Acts 1919 p. 736; §6977f3 Burns' Supp. 1921, Acts 1920 (Spec. Ses.) p. 38; §6977w3 *et seq.* Burns' Supp. 1921, Acts 1921 p. 846.

The specific objection to the constitutionality of these statutes urged by appellant is that Art. 2, §2,. of the Constitution of Indiana was so amended, as a result of the special election on September 6, 1921, as to eliminate therefrom the words "if he shall have been duly registered according to law," which had theretofore followed and modified the enumeration of the qualifications which should entitle a person to vote. And while Art. 2, §14, of the Constitution still reads as it did before such amendment of the other section was made, and concludes with a provision that the general assembly "shall also provide for the registration of all persons entitled to vote," appellant insists that this does not confer authority to enact the laws in question.

A brief has been filed under leave of court by an *amicus curiae,* in which he suggests that the judgment should be affirmed because the last amendment to

1. Art. 2, §2, of the Constitution was not adopted by the vote of "a majority of the electors of the state," within the meaning of Article 16 of the Constitution (§233 Burns 1914), which authorizes the adoption of amendments.

In construing the words "a majority of the electors," it is proper to consider the facts which attended the insertion of those words in the constitution. Article 5, §1, of the Constitution of 1816, provided that every twelfth year thereafter, at the general election for governor, a vote should be taken on the question of calling a convention to revise, amend or change that constitution, and that if "a majority of all the votes given at such election" should be in favor of a convention the governor should inform the general assembly thereof, whose duty it should be to provide by law for holding such a convention. R. S. 1843, p. 57. And the act of February 14, 1 1, under which the present constitution was submitted to popular vote for ratification or rejection,

provided that "if it shall appear that a majority of all the votes polled at such election were given in favor of the adoption of said constitution, it shall then become the constitution of the State of Indiana," etc. Acts 1851 p. 54.

The amendments by which the words "if he shall have been duly registered according to law" were added to Art. 2, §2 (§84 Burns 1914), and the provision that the general assembly "shall also provide by law for the registration of all persons entitled to vote" was added to Art. 2, §14, were adopted March 14, 1881, at a special election at which only 172,915 persons voted, of whom less than 170,000 voted on the subject of adopting or rejecting those two amendments, although 470,672 votes had been cast for candidates for the office of presidential electors in November, 1880, only four months before such election, and even more (470,738) for candidates for governor in October, and the United States census of 1880 showed 498,437 men of the age of twenty-one years and over, living in the state. But the governor, acting upon a certificate of the secretary of state as to the result of the election, issued his proclamation declaring the amendment adopted (Report Secy. of State 1881 p. 155), and his action has ever since been acquiesced in by all the people of the state.

The insistence by the *amicus curiae* that the amendment for which a majority of the persons (210,816 in number) who voted at the special election on September 6, 1921, cast their ballots (Indiana year book 1921 p. 12), was not adopted, is based upon the assumption that only a small part of the qualified voters of the state took part in that election, and that the number who actually voted in favor of adopting it were not a majority of those qualified to vote, as shown by the United States census and the returns from the Presidential election in 1920. It appears from the census returns in that

year that 1,779,820 persons of the age of twenty-one years and over were living in the State of Indiana, and from the election returns that 1,262,964 qualified persons actually voted for presidential electors in November, 1920, only ten months before the special election at which the constitutional amendments were submitted (Indiana year book 1920 p. 62). But it further appears that the governor, acting upon a certificate of the secretary of state as to the result of the election, issued his proclamation declaring that the amendment in question had been adopted and was in force (1 Record of Proclamations p. 457).

It thus appears that the amendment of 1921 was adopted by a majority of the votes cast at a special election at which less than half of the qualified voters, as shown by the census and the returns from the general election, actively participated, but in exactly the same way that the amendments of 1881 were adopted.

From what has been said it is apparent that if we should apply the rule that an amendment to the constitution cannot be adopted by the vote of a majority of all the electors who cast ballots at the election at which it is submitted, but can only be adopted by the affirmative vote of a majority of all those in the state who are entitled to vote, as that number is ascertained in another way than by counting those participating in such election, the application of such rule would not aid the appellee. If the enactment of a registry law is authorized and commanded by the constitution, it is because of amendments which were adopted only by a majority of the voters, cast at a special election when those who voted were less than half the qualified electors, as determined by such tests.

And the constitution, itself, was adopted at an election held under a law which made "a majority of all the

votes polled at such election" decisive of the question whether or not it should be adopted.

This argument as a cause for affirming the judgment, therefore, breaks under its own weight, and we shall not further consider it.

Prior to 1881 the Constitution of Indiana had not mentioned the subject of registering voters. On March 14 of that year a special election was held, pursuant to a statute (Acts 1881 p. 30) and proclamation (Report Secy. of State 1881 p. 148), at which certain amendments of the constitution were submitted for adoption by popular vote, and the secretary of state having certified the vote to the governor, he issued a proclamation declaring the amendments adopted, including amendments of §§2 and 14 of Article 2, and that "each of said amendments is now part of the Constitution of the State of Indiana." Report Secy. of State 1881 pp. 153, 155. Such action has been acquiesced in ever since by the people of the state and all departments of the state government. Of the amendments so adopted, §14 of Article 2 remains unchanged, and reads as follows: "All general elections shall be held on the first Tuesday after the first Monday in November; but township elections may be held at such time as may be provided by law; Provided, that the general assembly may provide by law for the election of all judges of courts of general and appellate jurisdiction by an election to be held for such officers only; and shall also provide for the registration of all persons entitled to vote."

Nine years after the adoption of these amendments, Judge Olds, speaking for the Supreme Court of Indiana, said: "In 1881 the electors of the State by a majority vote of over eighty-seven thousand, amended section 14 of article 2 of the Constitution so as to provide that the 'General Assembly * * * shall provide for

the registration of all persons entitled to vote'
*  *  *  That the General Assembly has the power to
enact a law providing for a uniform system of registra-
tion of all voters, we think, can not be controverted, and
that it is made the duty of the General Assembly by the
Constitution to enact a law providing a reasonable, uni-
form and impartial system for the registration of all
voters must be conceded  *  *  *." *Morris* v. *Powell*
(1890), 125 Ind. 281, 285, 286, 25 N. E. 221, 9 L. R.
A. 326.   Five years later Judge Coffey speaking for the
court, in setting out the provisions of the Constitution
bearing upon the validity of the Registration Law of
1891 (Acts 1891 p. 350), recited all of §2, Art. 2, except
the words "if he shall have been duly registered accord-
ing to law," and said that:   "Section 14, Art. 2, pro-
vides for a general registration law," without intimating
an opinion that §2 made any such provision.  *Brewer,
Aud.,* v. *McCleland* (1895), 144 Ind. 423, 425, 32 N.
E. 299.

The construction thus given to §14 of Art. 2, that it
authorizes and commands the general assembly to "pro-
vide for the registration of all persons entitled to vote,"
has not since been challenged so far as we know until a
different construction was suggested by the brief filed
by appellant.   We think that when this section says that
the general assembly shall provide for the registration
of "all persons entitled to vote," it means persons en-
titled to vote at all elections, and not merely at elec-
tions for judges, in case they are elected separately, as
appellant suggests.   As so interpreted this section of
the constitution gives the legislature power to enact a
registration law, notwithstanding the amendment of §2,
Art. 2, provided such law does not violate any other pro-
visions of the constitution.   See *Morris* v. *Powell, su-
pra; Brewer* v. *McCleland, supra.*

But it is urged that the provisions in the registration

laws that no person may vote unless he is registered, and that if a person offering to vote has not reg-

3. istered such fact shall be cause for challenging and excluding his vote, make the statutes conflict with Art. 2, §2, of the Constitution, as amended. That section, as adopted in 1921, reads as follows: "In all elections not otherwise provided for by this constitution, every citizen of the United States of the age of twenty-one years and upwards, who shall have resided in the State during the six months and in the township sixty days, and in the ward or precinct thirty days immediately preceding the election, shall be entitled to vote in the township or precinct where he or she may reside."

Article 2, §1, provides that "All elections shall be free and equal." And as §14 of Art. 2, recited above, had given the general assembly specific authority to "provide for the registration of all persons entitled to vote," if the language quoted from Art. 2, §2, be open to a fair and reasonable construction which will not make the two sections conflict with each other that construction is to be preferred.

The precise question under consideration was presented to the Supreme Court of Illinois, where it was objected that a registry law, by forbidding any person to vote unless he should have registered on the fourth Tuesday or the third Tuesday before the election, violated the provisions of a section of the constitution which declared every male citizen above the age of twenty-one years entitled to vote after having resided in the state one year and in the county ninety days, and in the election district thirty days, next preceding the election. After deciding that the legislature had power, to enact a reasonable registry law, the court, in holding the law under consideration to be valid, said: "First, the legislature possesses all the law-making power of the State, which the constitution does not ex-

pressly or impliedly prohibit it from exercising.
*   *   * Second, by prescribing certain qualifications
for voters, the constitution necessarily intended that
the legislature should provide some mode of ascertaining
and determining the existence of those qualifications.
A registry law is merely a mode of ascertaining and de-
termining whether or not a man possesses the necessary
qualifications of a voter.   *   *   * There must be some
*tribunal* to decide, whether or not a person is a citizen
of the United States over twenty-one years of age, and
has resided in the State one year, in the county ninety
days, and in the district thirty days.   There must be
some fixed *rules and regulations,* by which such tribunal
is to be guided, in determining this fact of citizenship
and these periods of residence.   There must be a *stat-
ute,* which shall designate the tribunal and prescribe
the rules and regulations.   The passage of such a stat-
ute is the legitimate province of the legislature alone.
*   *   * It is said, that the legislature has no author-
ity to require, that the registry be closed three weeks
before the election; that it has no authority to prohibit
a man from voting, because he has not established his
qualifications three weeks before the day for voting
arrives.   *   *   * If it be admitted, that the legisla-
ture can require a voter to establish his qualifications
*before elections,* it is difficult to see why, upon principle,
or as a question of power, it can not require such proof
to be made, as well three weeks before the day for vot-
ing, as ten days, or five days, or even one year, prior
thereto.   The real question involved in the objection is,
whether any man can be prevented from voting, who
proves, or offers to prove, on the day, on which he seeks
to cast his ballot, that he is a legal voter.   If cases can
be supposed, where the 'three weeks' requirement will
deprive qualified electors of the privilege of depositing
their votes, cases can also be supposed, where one day's

requirement will work the same result. This mode of reasoning, carried out to its logical sequence, will make any kind of a registry law unconstitutional. For it would be a physical impossibility for the judges of election to receive the votes and make up the registry at the same time and on the same day. If the legislature has the power to direct the registry to be completed before election day, and if, in its wisdom and under a sense of its responsibility to the people, it has said that three weeks before election is a reasonable date for the completion of the registry, shall this court substitute *its judgment* for that of the law making power, and say that a shorter time would have been more reasonable? * * * It may be, that as much as three weeks will be required to make such investigations as are necessary to determine the qualifications of the electors. The register must be made, as nearly as possible, a correct record of qualified voters. The names of those who are not entitled to vote, must be kept from the lists. The names, which may have been placed there by false or perjured testimony, must be erased. * * * All parts of the constitution must be construed together. If there is a provision, that all persons, possessing certain qualifications, shall be entitled to vote, there is also a provision, that all elections shall be free and equal. It is as much the duty of the legislature to pass measures for carrying the latter as for carrying the former provision, into effect. (Sec. 19 of schedule, to constitution.) If closing the registry three weeks before election may deprive a few persons, * * *, of the privilege of casting their ballots, keeping it open until a later date may admit to the polls hundreds of persons, who should never have been allowed to vote. When the ballot-box becomes the receptacle of fraudulent votes, the freedom and equality of elections are destroyed. * * * Where the law-making department of the gov-

ernment, in the exercise of a discretion not prohibited by the constitution, has declared that a certain period of time is needed for a specified investigation, it is not the duty of this court to declare, that such period is unreasonably long." *People* v. *Hoffman* (1886), 116 Ill. 587, on pp. 611, 56 Am. Rep. 793.

The reasoning in the case cited is unanswerable. Being charged by the constitution with the duty to "provide for the registration of all persons entitled to vote," and to enact such laws governing registration and the holding of elections that "all elections shall be free and equal," the legislature has power to determine what regulations shall be complied with by a qualified voter in order that his ballot may be counted, so long as what it requires is not so grossly unreasonable that compliance therewith is practically impossible. Requiring voters to appear at the polling booth between certain hours on election day and to cast their ballots in person, involves inconvenience, and some voters find themselves unable to attend at the time fixed. But that fact does not make a statute unconstitutional which provides when the polls shall open and close, and permits none to vote except those who cast their ballots in person during the hours when they are open. And since the legislature has power to provide by law for the registration of all voters, it has power to exclude from the privilege of voting those persons who refuse or neglect to register a reasonable number of days before the election.

The Constitution requires that all persons shall reside in a precinct thirty days before they can vote therein, and the provision contained in the registry

4. laws that voters shall register twenty-nine days before the election is not such an abuse of the legislative discretion that the courts can declare the laws void.

The several statutes under consideration are not un-

constitutional for any of the reasons urged against them. *Byler* v. *Asher* (1868), 47 Ill. 101; *State* v. *Butts* (1884), 31 Kans. 537, 2 Pac. 618; *Moore* v. *Sharp* (1896), 98 Tenn. 491, 41 S. W. 587; *State* v. *Ruhe* (1898), 24 Nev. 251, 52 Pac. 274; *In re Polling Lists* (1881), 13 R. I. 729.

The judgment is affirmed.

Townsend, J., concurs in the conclusion.