BLUE ET AL. *v.* STATE EX REL. BROWN.

[No. 26,410.   Filed January 23, 1934.]

*Charles B. Clarke, Martin M. Hugg, William Bosson, L. Russell Newgent,* and *Emsley W. Johnson,* for appellants.

*Frank Seidensticker* and *Ralph K. Kane,* for appellee.

HUGHES, J.—This is an action brought by the State of Indiana on relation of Belle Brown for a writ of mandate against Cortez Blue et al., as and constituting the County Council of Marion County, Indiana; the County Council of Marion County, Indiana, and Charles A. Grossart as Auditor of Marion County, Indiana. The relatrix alleges in her complaint that she is a

qualified voter of Center Township, Marion County, Indiana, and entitled to vote in the Primary to be held May 8, 1934, and in the general election to be held in November, 1934.

The relatrix further alleges that the County Council of Marion County, Indiana, has failed, neglected, and refused to appropriate any funds to conduct and carry on the registration of voters of said county under and pursuant to the registration law of 1933, the same being Acts, 1933, ch. 178, p. 886, §§7299-7339, Baldwin's Ind. Ann. Stat. 1934, and she further alleges that unless an appropriation is made and the qualified voters duly registered under and pursuant to the terms of said law, she and all other qualified voters of said county will be disfranchised. She asks that a mandate be issued to have Charles A. Grossart, as auditor of Marion County, Indiana, call the county council of Marion County in special session and then and there appropriate sufficient funds to conduct said registration of voters in said county.

The complaint was in one paragraph. To this paragraph of complaint the appellants filed separate and several demurrers for want of sufficient facts. The court overruled the demurrers, to which rulings the defendants (appellants herein) excepted, and refused to plead over and elected to stand upon their demurrer. The court thereupon entered a finding and judgment against defendants.

The assignment of errors is as follows:

1. The court erred in overruling appellant's separate and several demurrer to appellee's complaint.

We do not consider it necessary to set out the allegations contained in the complaint as they will be found in the propositions of the appellants presented in their brief and the opinion will follow the propositions as presented.

The action involves the validity of the Permanent Registration Act of 1933, ch. 178, p. 886 (§§7299-7339, Baldwin's 1934).

It is the contention of appellants that the Act of 1933, p. 886, providing for the permanent registration of voters is unconstitutional, void, and wholly inoperative, and under their memorandum to their demurrer they have set out nine propositions to sustain their contention. We will consider these propositions as presented.

Under proposition one the argument is presented that the power of the General Assembly of the State of Indiana to enact a law for the registration of voters was exhausted when the Act of March 14, 1919, p. 736, providing for the registration of voters was passed and which was repealed by an Act of 1927, p. 567. It is appellant's contention that Sec. 14, Article 2 of the Constitution of Indiana which provides "and shall also provide for the registration of all persons entitled to vote" (Burns Ann. Ind. Stat. 1926, Sec. 102) conferred upon the General Assembly of the State of Indiana a special power to enact a registration law, and having once exercised this power no further power is given to enact another registration law until specially empowered so to do by the authority of the State Constitution. To sustain this proposition the appellants cite *Furniss* v. *Brummit* (1911), 48 Ind. App. 442, 95 N. E. 1114; *Weir* v. *The State ex rel. Axtell* (1884), 96 Ind. 311, and *Leib* v. *The Commonwealth of Pa.* (1840), 9 (Watts) 200. We can not see wherein either of these cases are in point. Certainly the two Indiana cases are not. The Weir case merely decided that formerly the term of secretary of the county board of health was for one year and the board of commissioners, after having elected a secretary, can not annul their action, nor elect a successor until the year has expired. The case of *Furniss* v. *Brummit*,

*supra,* decided that one who obtains a decree enjoining the construction of a drain established under an order alleged to be void for want of jurisdiction, is estopped to assert in another suit that the board had jurisdiction in making such void order and that therefore the board's jurisdiction was lost in such proceeding.

The case of *Leib* v. *Commonwealth, supra,* involved an act classifying the associate judges which was given to the legislature at its first session under the amended Constitution of Pennsylvania. The court said: "It is not an ordinary act of legislation, in which one legislature has no power to bind its successors. . . . It is a delegation to that specific body of the portion of the sovereign power of the people, intrusted by them to the convention, establishing a fundamental law permanent and indefeasible as the constitution itself, partaking of eminent character, and intended to govern the conduct of the people and of the constituted authorities, as long as the judges remain to whom it is applicable." The court further held that the act in classifying the judges was rather the discharge of a ministerial authority than the exercise of legislative power. The reason applied in the above case can not be applied in the instant case.

It is the general rule that one legislature can not abridge or control the power of a succeeding legislature. *Taylor* v. *Strayer* (1906), 167 Ind. 23, 78 N. E. 256; *State* v. *Barker* (1868), 4 Kan. 379, 96 Am. Dec. 175; *Wright* v. *Wright* (1852), 2 Md. 429, 56 Am. Dec. 723.

In the case of *Wright* v. *Wright, supra,* the court said: "Except in the case of a grant or other contract, there is no constitutional power residing in one legislature to limit the power of succeeding legislatures. Within the purview of the constitution—with the exception we have mentioned—all legislatures are co-equal;

what one may do, a succeeding one may also do or undo. If this were not so, in the very nature of things, it would be within the power of the legislature at one session to exhaust or part with the whole lawmaking power of the state. The organization of society, no less than the constitution, contemplates the existence of the legislative power as indestructible, and as co-existent with itself and the organic law."·

The contention of appellants that the General Assembly of 1933 had no power to enact a registration law can not be sustained.

It is next contended, under proposition 2, by appellants that the act in question is unconstitutional and void, being in violation of Sec. 1, Article 2 of the Constitution of Indiana (Burns R. S. 1926, Sec. 90) providing that "all elections shall be free and equal" and in violation of Sec. 2, Article 2 (Burns R. S. 1926, Sec. 91) providing: "In all elections not otherwise provided by this constitution, every citizen of the United States, of the age of twenty-one years and upwards, who shall have resided in the state during six months, and in the township sixty days, and in the ward or precinct thirty days, immediately preceding such election, shall be entitled to vote in the township or precinct where he or she may reside." They also contend that the act is in violation of Sec. 4, Art. 2 (Burns R. S. 1926, Sec. 93), providing that, "No person shall be deemed to have lost his residence in the state by reason of his absence, either on business of this state, or of the United States." It is also contended that the act is in violation of Sec. 13, Art. 2 of the Constitution of the State of Indiana (Burns R. S. 1926, Sec. 101), providing that: "All elections by the people shall be by ballot; and all elections by the General Assembly, or by either branch thereof shall be *viva voce.*"

What is there in the act that violates any of the fore-

going constitutional provisions? We fail to see anything, and in our judgment the appellants have not pointed out anything that would sustain this contention. They contend in their brief that certain classes of voters constitutionally qualified are in fact barred from voting —such as the sick; traveling men; college students away in other states; public employees at Washington or elsewhere out of the state; those imprisoned, but not disfranchised and those whose names are not on the registration list by reason of the error, mistake, omission, or neglect of duty of the registration officials.

It is insisted that "a registration statute which makes no provision for the registration of voters, that is: persons who at the time of the election posses the constitutionel requirement of voters, who because of illness or necessary absence of the voter on public or private business, are unable to register, in unconstitutional."

It is true, there is no provision for the registration of absentees or those who are sick. Is it necessary to have such a provision in order to make the act constitutional? If it is, then we must concede that the act is unconstitutional. We, however, do not believe that such a provision is necessary. If it is necessary to provide for the sick and absentees in the registration law, then by the same reasoning why is it not necessary to have some provision in the general election law so that the sick and absentees may vote? We have never heard the argument presented that the latter law was unconstitutional because of the lack of such provisions, nor that the elections held during the greater part of the life of the state were illegal and void because of such fact. If, on the day of election, a qualified voter is sick and unable to go to the voting place it goes without question that he can not vote, and if the absentee is unable to return in time to vote he, too, loses his vote, and, in the absence of an absentee voting law, no con-

stitutional provision is violated. The election law is a general one, applying to all alike who come within its provisions, but if some elector on account of sickness or being absent is unable to vote this is not the fault of the law.

If the voter is given a reasonable opportunity to register he is not in a position to complain that any of his constitutional rights have been violated. It certainly can not be said that under the present act a voter has not a reasonable opportunity to register, and as said in the case of *Simmons* v. *Byrd* (1922), 192 Ind. 274, 136 N. E. 14, "the legislature has power to determine what regulations shall be complied with by a qualified voter in order that his ballot may be counted, so long as what it requires is not so grossly unreasonable that compliance therewith is impossible."

Let us look to the act and see whether or not there is anything unreasonable about it so that "compliance therewith is impossible." Section 7 of the act provides that: "The first registration period . . . shall begin on the fifteenth day of January, 1934, and shall continue up to and including the twenty-ninth day preceding the date on which the primary election of 1934 will be held. The registration shall be resumed on the fifteenth day of May, 1934, and shall continue up to and including the twenty-ninth day preceding the date on which the general election of 1934 will be held. Thereafter, the registration period shall begin on the first secular day of December of each even numbered year, shall continue up to and including the twenty-ninth day preceding the date on which the general or city primary election next ensuing will be held, shall be resumed on the fifteenth day of May next succeeding the day of the general or city primary election, and shall continue up to and including the twenty-ninth day preceding the date on which the general or city election will be held. . . ." By the provisions of this section

two hundred and thirty-two days are given for the purpose of registration and a period of eighty-five days for the primary of 1934. Certainly the time given is reasonable.

"It is a general rule that in the absence of constitutional inhibition, the legislature may adopt registration laws if they merely regulate in a reasonable and uniform manner how the privilege of voting shall be exercised. It is true that the Constitution by prescribing the qualifications of those who may vote confers upon persons coming within the class so created a right to vote which can not be abridged by the legislature, and, therefore, the theory upon which registration laws may be supported is that they do not impair or abridge the elector's privilege but merely regulate its exercise by requiring evidence of the right. The fact that a constitutionally qualified voter may be prevented from voting through failure to comply with the law does not necessarily invalidate it, provided he be afforded a reasonable opportunity to register before the election." 9 R. C. L. Sec. 52, p. 1036.

Many cases are cited to the above statement of the law relative to a registration law. We have thoroughly examined all of the cases cited, and others in addition, and are firmly convinced that the statement is correct.

In practically all the cases decided by the different courts of the land it is held that if an elector has been afforded a reasonable opportunity to register before the election the fact that he may be prevented from voting through failure to comply with the law would not invalidate the law. And this is true whether the failure to register was due to sickness, absence from home, or for other reasons. The test is—was there a reasonable opportunity given to register. As said in the case of *City of Owensboro* v. *Hickman* (1890), 90 Ky. 629, 14 S. W. 688, 10 L. R. A. 224, "The elector is invested by the Constitution with

the privilege of voting. It is the sign of sovereignty in him. Yet he may, for various reasons, and without his fault, be unable to exercise it upon the day of election. He may be unable to go to the voting place; and yet no one will claim that the law fixing a day for the election, or requiring the voter's presence at the polls, as a condition of the exercise of this right of suffrage, is void upon the ground that he was unable to vote. *If he be afforded a reasonable opportunity before the election to register, it is but a reasonable regulation of the exercise of the privilege.*" (Italics are ours.)

The appellants cite the case of *Morris* v. *Powell* (1890), 125 Ind. 281, 25 N. E. 221, and *Brewer* v. *McClelland* (1895), 144 Ind. 423, 92 N. E. 299, as holding that where a registration law makes no provisions for the registration of those who are sick or absent on account of public or private business is unconstitutional. We do not agree to the construction placed upon these cases by the attorneys for the appellants. The registration laws, if they can be called registration laws, passed upon in these cases were entirely different in all essentials from the present one. Neither was a general registration law, but on the contrary the Act of 1889, passed upon in the Morris case, as said by the court, "assumed to classify the voters of the state and to impose upon one class burdens not borne by the other." The Act of 1891 was very similar to the Act of 1889 and in passing upon the Act of 1891, the court said: "The law now under consideration is subject to most of the constitutional questions urged against the law of 1889. It assumes to classify the voters of the State, and to impose upon one class burdens not borne by the others. . . . All we desire to add is, that it can not be demonstrated by any course of sound reasoning, that an election held under a law which imposes upon one class of citizens burdens not borne by others, is equal."

Referring again to the Act of 1889, passed upon in the Morris case, we wish to call attention to the provisions of this act. It provided that a person absent from the state for a period of six months or more and any person who shall not have been a bona fide resident of this state and of the county in which he resides, at least six months before any election shall register a notice of his intention to become a qualified elector therein, in the office of the clerk of the county in which he resided. It also provided that he should produce a certificate from the county auditor that his name had been on the tax duplicate during his absence and that he is still a taxpayer in the county and that such registration should be at least three months prior to any such election. No such provisions are contained in the present act. The above act required, (1) that a person who was absent from the state six months should register a notice in the clerk's office of his intention to become a qualified elector; (2) that he should produce a certificate from the county auditor that his name had been upon the tax duplicate during his absence from the state; and (3) such registration should be made at least three months prior to any election. The court held that the foregoing requirements were void and unconstitutional for the reason that they added qualifications to vote contrary to the qualifications as provided for in the constitution, one being a property qualification and the other a residence qualification of ninety days in a precinct instead of thirty days as provided in the constitution. And the act also singled out one class—those who had been absent from the state six months. It is well to note that, although the court held the Act of 1889 void, it was said that: "The General Assembly has the power to enact a law providing for a uniform system of registration of all voters, we think, can not be controverted, and that it is made the duty of the

General Assembly by the Constitution to enact a law providing a reasonable, uniform and impartial system for the registration of voters must be conceded."

It is true that the court, in discussing the six months provision of the act, said: "Indeed, it seems to us beyond controversy that if the present act can be upheld, aimed as it is at a class of traveling men, and men whose business, either for a public or private character, or ill health, may take them from the State six months, and persons who may be required to move from one county to another to obtain employment, within six months preceding an election, and imposing, as it does, a burden upon this class of citizens, which is imposed upon none other, then the Legislature may enact a valid law relating to any class, designating them by nationality, place of birth, religious belief, professional, or business pursuits, and require them and none other, to register."

The court was here speaking of the six months classification and nothing else, and did not hold that the act was void because it did not provide for the registration of those who were ill or those who were absent on public and private business, as contended for by the appellants.

Cooley on Constitutional Limitations, 8th Edition, Vol. 2, p. 1369, and 1370, relative to conditions to the exercise of elective franchise, says: "In some of the States it has also been regarded as important that lists of voters should be prepared before the day of election, in which should be registered the name of every person qualified to vote. Under such a regulation, the officers whose duty it is to administer the election laws are enabled to proceed with more deliberation in the discharge of their duties, and to avoid the haste and confusion that must attend the determination upon election day of the various and sometimes difficult questions concerning the right of individuals to exercise this impor-

tant franchise. Electors, also, by means of this registry, are notified in advance what persons claim the right to vote, and are enabled to make the necessary examination to determine whether the claim is well founded, and to exercise the right of challenge if satisfied any person registered is unqualified. When the constitution has established no such rule, and is entirely silent on the subject, it has sometimes been claimed that the statute requiring voters to be registered before the day of election, and excluding from the right all whose names do not appear upon the list, was unconstitutional and void, as adding another test to the qualifications of electors which the Constitution has prescribed, and as having the effect, where electors are not registered, to exclude from voting persons who have an absolute right to that franchise by the fundamental law. This position, however, has not been generally accepted as sound by the courts. This provision for a registry deprives no one of his right, but is only a reasonable regulation under which the right may be exercised. . . .

"All regulations of the elective franchise, however, must be reasonable, uniform, and impartial; they must not have for their purpose directly or indirectly to deny or abridge the constitutional right of citizens to vote, or unnecessarily to impede its exercise; if they do, they must be declared void."

The appellants cite the case of *Dagget* v. *Hudson* (1885), 43 Ohio 548, 3 N. E. 538, and the case of *State ex rel.* v. *Corner* (1887), 22 Neb. 265, 34 N. W. 499. In the case of *Dagget* v. *Hudson, supra,* we find there only seven days given for registration. Sec. 2926 of the act provided that the registrars shall attend at the usual place for holding elections on the third Thursday preceding every general election, from 8 A. M. to 9 P. M. for the purpose of registering votes, and be in attendance there for a like purpose for five successive days.

And Section 2926e provided that the registrars shall be in attendance again on Wednesday preceding the general election for adding the names of those who will be entitled to vote at the ensuing election. This act was held void because the court believed it to be an unreasonable regulation of the constitutional right to vote. That the limitation to seven days of the right to register was unreasonable and an abridgement and impairment of the right to vote under the guise of regulation.

The case of *State ex rel.* v. *Corner, supra,* was based upon an act of Nebraska which gave only four days in which to register, to wit: "On Tuesday four weeks, the Wednesday of the third week and Friday and Saturday of the second week preceding the day of the November election." The court held that the act was unreasonable and void.

The case of *The State* v. *Butts* (1884), 31 Kan. 537, 2 Pac. 618, decided by Judge Brewer, involved the construction of an Act of 1879 providing for registration. Section 5 of the act provided that the poll books were to be open at all times during the year for registration, except during the ten days prior to any election. The court said: "Doubtless under the pretense of registration and under the pretext of securing evidence of voters' qualifications, laws might be framed which would cast so much burden as really to be imposing additional qualifications. As for instance, suppose the law required all voters in the state to be registered on personal attendance at the state capitol, on the first day of the year, for every election taking place during the year. The legislature can not by in form legislating concerning rules of evidence in fact overthrow constitutional provisions. But where ample facilities for registering are furnished, and the *opportunities for registering are continued down to within a reasonable time* of the election day, then it can not be said that

mere rules of evidence are abused. . . . If the legislature has the right to require proof of a man's qualification, it has a right to say when such proof shall be furnished, and before what tribunal; and unless this power is abused the courts may not interfere. It can not be held that when the poll books are open throughout the year, up to within ten days of the election, and in a public office in the city, there is any abuse as to either the time or manner of obtaining a list of legal voters. . . . In conclusion, we think it may be affirmed that under the requirements of our Constitution, it is the duty of the legislature to provide for a registration of voters; that it may provide that such registration be completed prior to the day of election, providing that ample facilities and time for registration are prescribed; and that it may also provide that one not registered shall not be allowed to vote."

The case of *People* v. *Hoffman* (1885), 116 Ill. 587, 5 N. E. 596, 8 N. E. 788, is a very exhaustive and well considered one upon the registration law.

One of the provisions of the Illinois registration law was that it required one to register three weeks before election. Upon this question, the court said: "It is difficult to see why, upon principle or as a question of power, the legislature can not require proof to be made as well three weeks before the day for voting as ten days or five days or even one day prior thereto. The real question involved in the objection is whether any man can be prevented from voting who proves, or offers to prove, on the day on which he seeks to cast his ballot, that he is a legal voter. If cases can be supposed where the three weeks requirement will deprive qualified electors of the privilege of depositing their votes, cases can also be supposed where one day's requirement will work the same result. This mode of reasoning, carried out to its logical sequence, will make any kind of registration

law unconstitutional; for it would be a physical impossibility for the judges of elections to receive the votes and make up the register at the same time and on the same day. If the legislature has the power to direct the registry to be completed before election day, and if, in its wisdom and under a sense of its responsibility to the people, it has said that three weeks before an election is a reasonable date for the completion of the registry, shall this court substitute its judgment for that of the law making power, and say a shorter period would have been more reasonable? . . . Cooley, in his work on Constitutional Limitations, 601, and Chief Justice Shaw in *Capen* v. *Foster* (1832), 29 Mass. (12 Pick.) 485, both sustain the validity of statutes 'requiring voters to be registered before the day of election, and excluding from the right all whose names do not appear on the list.' Just how long before election the votes must be registered is a matter about which individuals and courts and legislatures may differ in opinion, but such differences of opinion do not affect the soundness of the principle."

The court held the twenty-one day provision was reasonable and that it does not violate the Constitution.

It is also contended that the act in question violates Sec. 1, Art. 2 of the Constitution which provides that "all elections shall be free and equal." It is said ■ elections are free when the voters are subject to no intimidation or improper influence, and when every voter is allowed to cast his ballot as his own judgment and conscience dictate. That they are equal when the vote of every elector is equal in its influence upon the result to the vote of every other elector; when each ballot is as effective as every other ballot. *People* v. *Hoffman, supra,* Cooley, Const. Lim. 45. The registration act in no way violates the foregoing constitutional provision.

Can it be reasonably said that the Act of 1933 providing for a permanent registration of voters denies or abridges the constitutional right of an elector to vote or unnecessarily impedes its exercise? Can it be said that the electors have not a reasonable and ample opportunity to register? We think not. Under the Constitution the legislature is mandated to pass a registration law. It is for the legislature to fix the regulations and terms of a registration law when enacted; to provide the machinery for ascertaining prior to the election who are legal voters. It is for the legislature to furnish a reasonable regulation under which the right to vote is to be exercised, and it is uniformly held that it may adopt registration laws if they merely regulate in a reasonable and uniform manner how the privilege of voting shall be exercised.

It is our opinion that the act in question does not violate any of the constitutional provisions as contended by appellants under their proposition two.

The contention of the appellants as set out in their third proposition—that the act is invalid because there is no method fixed for determining the compensation of the registration officers and other expenses, or by whom they shall be paid can not be sustained.

Section 5 provides as follows: "Except as hereinafter otherwise provided, the expense of registration and the preparation therefor, as herein provided, shall be paid out of the general fund of the county treasury, by the board of county commissioners, in the same manner as election expenses are paid, and the county council shall make the necessary appropriations therefor . . ."

Section 6 provides: "The clerk of the circuit court of each county shall be ex officio the registration officer of the county and shall have full charge and control of the registration. The clerk of each city or town and

the assessor of each township shall be ex officio a deputy registration officer for such county. In addition the clerk of the circuit court shall appoint as many deputy registration clerks as may be necessary. . . . For their services as deputy registration officers, the clerk of each town and city, the assessor of each township and each and every deputy registration officer appointed by the clerk of the circuit court shall be entitled to receive the sum not to exceed five cents for each and every registration blank or transfer or registration which such registration officer delivers, properly filled out and executed to the clerk of the circuit court of the county."

Section 29 provides: "For his services as the registration officer of the county, the clerk of the circuit court shall be entitled to receive the sum of not to exceed four cents for each and every registration blank or transfer of registration which such clerk of the circuit court fills out and executes, and such compensation in addition thereto as may be fixed by the board of county commissioners, for which additional sum the county council shall make appropriation."

We do not see how it can be maintained that the provisions as above set out, relative to the compensation to be paid for the work and expense of registration, are not sufficiently clear and explicit.

The clerk of the circuit court is to receive not to exceed four cents for each registration made before him and for additional work such amount as may be fixed by the county commissioners; the deputy registration officers are to receive not to exceed five cents for each registration and all of the expense of the registration is to be paid by the county commissioners out of the general fund of the county and the county council shall make the necessary appropriation.

The county commissioners can not allow the clerk of the circuit court more than four cents for each registra-

tion and for any additional work such compensation as in their judgment they think it is worth. They have the right to pay the deputy registration officers as much as five cents for each registration but no more. The commissioners have the right to fix the amount to be paid as long as the board stays within the limitation fixed by the act. Under the act there is a great amount of work to be done by the clerk of the circuit court in addition to the registration of those who appear in the clerk's office to be registered, and for this additional work he is entitled to recover for the value of the work done. This amount, whatever it may be, is to be fixed by the board of county commissioners and allowed as other legitimate claims are allowed against the county.

Sec. 5965, Burns 1926 (§5256, Baldwin's 1934), provides: "The county commissioners shall examine into the merits of all claims so presented; and may, in their discretion, allow any claim, in whole or in part, as they may find it to be just and owing."

Proposition five given by appellants for holding the act invalid is based upon the omission of registration of voters for the election of school commissioners in the school cities of the state. It is their contention that the act, in this respect, violates Sec. 23, Art. 1 of the Constitution of Indiana and grants to the eligible voters at school elections privileges and immunities which upon the same terms do not belong to all citizens, and also that it violates Sec. 23, Art. 4 of the Constitution which provides that in all cases where a general law can be made applicable it must be done.

In our judgment neither of the above provisions of our Constitution are violated by any provisions of the act in question. It relates only to sections 2 and 14 of Art. 2 of the Constitution and school elections are governed by sections 1 and 8 of Art 8 of the Constitu-

tion. As said in the case of *Board of Education Commission* v. *Knight* (1917), 187 Ind. 108, 118, 117 N. E. 565: "Concerning the school cases, it is enough to note that, except as to the selection of a state superintendent of public instruction, the entire matter of developing the public school system and providing for its administration resets with the General Assembly under Art. 8, Sec. 1, of our Constitution, and is in no sense governed by any provision made for the selection of public officers generally."

The provision of the Constitution which mandates the legislature to provide for a registration law is found in Sec. 14 of Art. 2 and is as follows: "All general elections shall be held on the first Tuesday after the first Monday in November; but township elections may be held at such time as may be provided by law; provided, that the General Assembly may provide by law for the election of all judges of court of appellate and general jurisdiction by an election to be held for such officers only at which time no other officers shall be voted for; and shall also provide for the registration of all persons entitled to vote."

It is manifest that school elections do not come within the purview of the above provision of our Constitution.

It is next insisted by appellants under proposition 6, that sections 7 and 8 of the act are unconstitutional because they violate Sec. 23, Art. 1 of the Constitution of Indiana, granting privileges and immunities to certain classes and citizens which upon the same terms do not equally belong to all citizens.

The appellants contend that section 7 provides for two registration periods—one from Jan. 15 until the 29th day preceding the primary election of May 8, 1934, and the other being from May 15th until the 29th day preceding the General Election in November, 1934. We

feel that this is a strained construction to be placed upon the act and that the same can not be upheld.

Sec. 7 provides: "The first registration period under the provisions of this act shall begin on the fifteenth day of January, 1934, and shall continue up to and including the twenty-ninth day of preceding the date on which the primary election of 1934 will be held. The registration shall be resumed on the fifteenth day of May, 1934, and shall continue up to and including the twenty-ninth day preceding the date on which the general election of 1934 will be held. Thereafter, the registration period shall begin on the first secular day of December of each even numbered year, shall continue up to and including the twenty-ninth day preceding the date on which the general or city primary election next ensuing will be held, shall be resumed on the fifteenth of May next succeeding the day of the general or city primary election, and shall continue up to and including the twenty-ninth day preceding the date on which the general or city election will be held. . . ."

Section 8 provides: "For the purpose of compiling the registration books of the several precincts, as provided herein, there shall be a registration of all voters in the state during the first registration period hereinbefore provided, and no person who is not so registered shall be permitted to vote at any primary or at the general, or city election next ensuing. . . ."

In construing the above sections of the act, we must give them a reasonable construction, and, if possible, one that will uphold the validity of the act rather than to strike it down. In doing this we hold that the act only provides for one registration period in 1934. We think no other reasonable construction could be given. We think the act, when taken and considered in its entirety, intended that all electors should have the fullest opportunity to register and that the whole of the year 1934, except as provided, should

be given for this purpose, and to be considered as one registration period.

The appellants further declare, under their proposition 7, that section 6 of the act is invalid because of the provision that: "The deputy registration officers ▮ so appointed shall be selected, as nearly as practicable, in equal numbers, from the two political parties which cast the highest and second highest vote for the secretary of state in such county at the general election last preceding, and the persons so appointed shall be appointed on recommendation in writing of the county chairman of such political parties, filed in the office of the clerk of the circuit court, not less than ten days before the beginning of the registration period." It is appellants' contention said provision violates Sec. 23, Art. 1 of the Constitution which provides: "The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

It is beyond the power of our imagination to see how the provision in question violates the foregoing section of Art. 1 of the Constitution. The case of *State ex rel. Holt* v. *Denny* (1888), 118 Ind. 449, 21 N. E. 274, is cited by appellants to support their contention. The question in this case involved the legality of an act of the General Assembly of 1889, providing for a Board of Metropolitan Police and Fire Department in cities of 29,000 or more inhabitants. It provides that the captains, sergeants, detectives, and other officers and patrolmen, and the firemen and employees of the fire department shall be selected equally from the two leading political parties of said cities. Section 8 of the act gave the officers and members of the police force common law and statutory powers of constables, and section 9 gave to them exclusive power to serve process issued from certain courts within the city. With

reference to this power the court said: "They are by virtue of such Act, public officers, as are the commissioners provided for by said act, and the provision of the law limiting the right to hold such police offices to persons belonging to one of the two leading parties within such cities is invalid, as it grants a class of citizens belonging to two leading parties privileges and immunities, viz., the right to hold such police offices, that it does not confer on all citizens. . . . The right to hold public office is a right which belongs alike to every voter residing within the political division of the state from which such officer is chosen, unless otherwise provided by the Constitution."

The persons selected to assist in the registration can not be classified as officers. They are merely temporary appointees. They do not exercise rights and privileges to which every person is entitled and therefore do not come within the meaning of section 23, Art. 1. It has long been the law that judges of election boards, members of the State Board of Election Commissioners and members of the County Board of Election Commissioners are selected from the two political parties that cast the largest vote in the state at the last preceding election and no question has ever been raised as to the legality of these laws. *People* v. *Hoffman, supra.*

Section 25 of the act is attacked in the 8th proposition of the appellants. Said section provides: "Any voter of the county or city may challenge the registration of any registered voter of such county or city by submitting to the clerk of the circuit court of the county, not later than two weeks before any such primary, general, or city election, an affidavit alleging that such voter is not qualified to vote in the precinct in which he is registered, and specifying therein the reasons why such challenged voter is dis-

qualified. Upon receipt of such affidavit, the clerk of the court shall mail to such challenged voter, at his registered address, a notification of such challenge. If the voter so notified fails to appear before the clerk within seven days and answer the questions and take the oath required of persons who are challenged on the same grounds at an election, or to mail to the clerk a sworn statement that he is a qualified voter and entitled to vote in the precinct in which he is registered, the clerk of the court shall cancel such registration . . . and if such challenged voter appears to vote at such election he shall be permitted to vote if he takes the oath required by law of other challenged voters."

The appellants contend that this section violates sections 1 and 2 of Art. 2 of the Constitution in that it is unreasonably adding to the constitutional qualifications of a voter. We cannot agree to this construction. The right to challenge is a safeguard to an honest and fair election, and without it the door would be wide open to fraudulent voting. This right has been one of the provisions of our election laws for years and it can hardly be said now that it adds to the constitutional qualifications of a voter. The provisions of this section are no burden upon the one challenged. It gives him the opportunity in advance to settle his qualifications as a voter if he desires to do so; if not, he may wait until election day, appear at the polls, take the oath as other challenged voters, and he is then permitted to vote.

The 9th and last proposition of the appellants is that section 32 of the act is in conflict with sec. 2, Art. 2 of the Constitution in that it adds to the constitutional qualifications as provided in said section. Section 32 provides that when an elector presents himself to vote, he shall be required to sign his name and address on a record to be kept by the election board, which shall be known as the poll list. There is a pro-

vision made for those who can not sign their name and address.

The purpose of this section is clear. If there is any question as to the right of the person to vote, his handwriting may be compared to that when he registered. It is another safeguard for a fair and honest election and, in the case of a challenge, might be a deciding factor. It is merely another method of the elector proving his right to vote. The old law provided that when a voter entered the voting place he announced his name to the election board and the clerks wrote his name on the voting list; under this law the voter himself writes his name and address, if he is able to do so, and if not the clerks do so for him. No new voting qualification is added and therefore sec. 2 of Art 2 of the Constitution is not violated.

Many cases have been cited by the appellants that we have not referred to in this opinion. We have, however, carefully read all the cases cited, and while some of them in other jurisdictions may seem to have come to other conclusions than we have reached in this opinion, we are confident that, by the weight of authority, we have come to the correct result in this case.

The case of *Simmons* v. *Byrd, supra,* decided by this court on June 23, 1922, is a very illuminating one upon some of the questions involved in the instant case. We have not quoted at length from this case because we did not desire to unnecessarily extend this opinion. We wish, however, to call specific attention to it.

It has not been contended by the attorneys for the appellants that the General Assembly, under the Constitution of Indiana, has not power to enact a registration law. It is their contention that the present act, as pointed out by them, is unconstitutional.

Much has been and is now being said about the financial burden that the registration law places upon the

taxpayers of the state. Whether the act should or should not have been passed is not for this court to say. That was a matter wholly for the General Assembly to decide. We have nothing to do or say as to the wisdom, policy, or expediency of the act. Suffice it to say, it was passed, and it is here for this court to pass upon the constitutionality of the act. We have given all questions presented our most careful consideration and in our judgment the act in question is constitutional.

Judgment affirmed.