FILED

Jun 29 2023, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



APPELLANT, PRO SE

Thomas J. Herr
Herr & Phillips, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas J. Herr,

*Appellant-Plaintiff,*

v.

State of Indiana,

*Appellee-Defendant*

June 29, 2023

Court of Appeals Case No.
22A-PL-142

Appeal from the
Tippecanoe Superior Court

The Honorable
Randy J. Williams, Judge

Trial Court Cause No.
79D01-2207-PL-63

**Opinion by Judge Vaidik**
Judges Mathias and Pyle concur.

**Vaidik, Judge.**

# Case Summary

[1] Thomas J. Herr challenges the constitutionality of the primary-election system in Tippecanoe County. Indiana has adopted a closed primary system, in which each eligible political party (usually the Republican and Democratic parties) holds a separate primary to choose its nominees for the general election, and only voters affiliated with that party may vote in that party's primary. In most counties in Indiana, including Tippecanoe County, this system is used not only to nominate executive and legislative candidates but also judicial candidates. As such, in order to vote for judicial candidates in a Tippecanoe County primary, a voter must affiliate themselves with an eligible political party and vote only among that party's candidates.

[2] Herr, who lives in Tippecanoe County, does not want to affiliate with a single political party, but he cannot participate in the primary elections without doing so. He argues this violates his right to vote under the state and federal constitutions. Furthermore, he notes that other counties in Indiana hold non-partisan elections for judicial officers and argues this disparate treatment between counties also violates the state and federal constitutions. The trial court found no constitutional violation. We agree and affirm.

# Facts and Procedural History

[3] Indiana Code chapter 3-10-1 governs the procedures for primary elections that occur in general-election years. A primary election is held in May of each general-election year. Ind. Code § 3-10-1-3. Most counties in Indiana hold "closed" partisan primaries, wherein each political party's nominees are selected only by those affiliated with that party. *See Common Cause Ind. v. Individual Members of the Ind. Election Comm'n*, 800 F.3d 913, 915 (7th Cir. 2015) ("Indiana uses a closed primary system"); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 570 (2000) (defining closed partisan primary as one "in which only persons who are members of the political party . . . can vote on its nominee").[1] Each political party "whose nominee received at least ten percent (10%) of the votes cast in the state for secretary of state at the last election" selects nominees to be voted for in the general election. I.C. § 3-10-1-2. Eligible political parties have separate tickets containing that party's candidates, and voters select one ticket and vote only among that party's candidates. I.C. § 3-10-1-15. To vote in a party's primary, the voter must be registered to vote and have "at the last general election, voted for a majority of the regular nominees of the political

---

[1] Indiana's primary system may be more akin to a "semi-closed" primary, in which a political party's primary is open not only to members but also to independent voters, given that under Indiana's system no formal membership, enrollment, or registration with the party is required. *See Clingman v. Beaver*, 544 U.S. 581, 584 (2005) (defining a semi-closed primary as one in which a party's members and, if the party wishes, voters registered as independents, could vote in the party's primary). However, given that both parties, as well as the Seventh Circuit, refer to Indiana's system as a "closed primary," we will do the same. And notably, our analysis would be the same for either system, as Herr's arguments hinge on the fact that he must choose a particular political party's ticket to vote for judicial candidates, which he must do under either a closed or semi-closed system.

party holding the primary election" or intend "to vote at the next general election for a majority of the regular nominees of the political party holding the primary election." I.C. § 3-10-1-6.

[4] In primary elections, political parties nominate candidates for United States Senator, Governor, United States Representative, legislative offices, and local offices, which may include local judges. I.C. §§ 3-10-1-4; 3-5-2-29. Most counties in Indiana, including Tippecanoe County, have partisan judges who are elected using the closed primary system described above—each political party selects candidates, voters affiliated with the parties (based either on their voting history in the previous general election or their intent in the next) vote among those candidates for that party's nominee, and the winner of each party's primary then runs in the general election. I.C. § 33-33-79-3. However, in Allen and Vanderburgh Counties, the elections for judges are nonpartisan. Therefore, candidates for judicial office are not on the primary ballot and instead appear on the general-election ballot without party designation. I.C. §§ 33-33-2-9; 33-33-82-31.

[5] In 2022, Herr, who lives and works as a practicing attorney in Tippecanoe County, filed suit seeking a declaratory judgment that its primary-election system is unconstitutional. Specifically, he challenged the closed, partisan nature of judicial elections in Tippecanoe County, arguing that to vote for judicial candidates in the primary he must select one political party and vote only among that party's candidates and that this violates both the state and federal constitutions. Both Herr and the State filed cross-motions for summary

judgment. The trial court granted the State's motion and denied Herr's, finding that Tippecanoe County's closed primary-election system is not unconstitutional.

Herr now appeals.

# Discussion and Decision

Herr renews his argument that Tippecanoe County's closed primary system for electing judges is unconstitutional. This system is laid out in state statute, *see* I.C. ch. 3-10-1, and we review the constitutionality of statutes de novo. *Himsel v. Himsel*, 122 N.E.3d 935, 945 (Ind. Ct. App. 2019), *reh'g denied, trans. denied*. "Statutes come before us 'clothed with the presumption of constitutionality until clearly overcome by a contrary showing.'" *Id.* (quoting *Zoeller v. Sweeney*, 19 N.E.3d 749, 751 (Ind. 2014)). "The party challenging the constitutionality of a statute bears the burden of proof, and all doubts are resolved against that party and in favor of the legislature." *Id.* (citation omitted).

## I. Federal Claims

Herr first asserts Tippecanoe County's primary voting system places an unconstitutional burden on his federal right to vote and violates equal protection. "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 1377-78 (1964). The U.S. Supreme Court has recognized the right to vote is fundamental and that burdens on voting can violate the First

and Fourteenth Amendments. *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986).

[9] In addressing a challenge to state election laws under both the First and Fourteenth Amendments, we apply the test laid out in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). *See Acevedo v. Cook Cnty. Officers Electoral Bd.*, 925 F.3d 944, 948 (7th Cir. 2019) (emphasizing *Anderson* applies to "*all* First and Fourteenth Amendment challenges to state election laws" and applying it to an equal-protection claim). There, the Court acknowledged that although the rights of voters were "fundamental," there must also "be a substantial regulation of elections if they are to be fair and honest." *Anderson*, 460 U.S. at 788. And these regulations, whether they govern "the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably [affect]—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Id.* To subject every voting regulation to strict scrutiny "would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Therefore, we apply a "more flexible" standard:

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id.* at 434 (citing *Anderson*, 460 U.S. at 788-89). Under this standard, a regulation must be narrowly drawn to advance a state interest of compelling importance only when it subjects the voters' rights to severe restrictions. *Id.* If it imposes only "reasonable, nondiscriminatory restrictions" upon those rights, the State's important regulatory interests are generally sufficient to justify the restrictions. *Anderson*, 460 U.S. at 788.

## A. First Amendment

Herr first asserts that Tippecanoe County's closed primaries inflict an unconstitutional burden on his right to vote. Specifically, he argues closed primaries "require that [he] express objectionable views and accept unwanted associations" in order to vote, in violation of the First Amendment. Appellant's Br. p. 18. The U.S. Supreme Court seemingly rejected an identical challenge to closed primaries by summarily affirming *Nader v. Schaffer*, 417 F. Supp. 837 (D. Conn. 1976), *summarily aff'd*, 429 U.S. 989 (1976). There, unaffiliated voters challenged a state statute limiting primary voting to those people enrolled in political parties, arguing in part that this requirement infringed on their right to vote. The district court held there was no constitutional violation, finding the enrollment process—filing an application—to be "not particularly burdensome" and noting that the state had a legitimate interest in protecting both the associational rights of party members and the integrity of primary elections. *Id.* at 847. Other courts have similarly found closed partisan primary elections do not violate the First Amendment. *See Ziskis v. Symington*, 47 F.3d 1004, 1006 (9th Cir. 1995) (closed primary-election system did not violate independent

voter's rights under First or Fourteenth Amendments); *Balsam v. Sec'y of N.J.*, 607 Fed. Appx. 177, 183 (3rd Cir. 2015) (same).

[11] Even assuming, given the "limited precedential effect" given to summary dispositions, *Nader* is not binding on us, we agree with its conclusion. *Anderson*, 460 U.S. at 784.[2] To vote in Tippecanoe County's primary election, a voter must have simply voted for the majority of that party's candidates in the previous general election or intend to do so in the next. This is not particularly burdensome. Unlike other systems the U.S. Supreme Court has upheld, it does not even require prior action on the part of the voter or formal enrollment with the party. *See Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973) (upholding closed primary-election law that required voter to formally enroll as a member of a party several months before the primary). Nor does it "lock in" voters, who are free to decide at each primary which party's ticket to choose. *See id.* at 759 (noting the closed primary system allowed voters to easily vote in a different party primary each year if they chose to do so). The only burden Herr points to is the closed nature of the primary itself—that he must choose a party's primary to participate in and vote only among that party's candidates. But this burden, if any, is minimal, as Herr does not have a strong interest, let alone a right, to choose the nominee for a party he does not belong to. *See Cal. Democratic Party*, 530 U.S. at 574 ("As for the associational 'interest' in selecting the candidate of

---

[2] The U.S. Supreme Court has cited *Nader* as the controlling precedent when addressing claims made "by nonmembers of a party seeking to vote in that party's primary despite the party's opposition." *Tashjian*, 479 U.S. at 215 n.6.

a group to which one does not belong, that falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest."); *Clingman v. Beaver*, 544 U.S. 581, 588-89 (2005) (questioning whether an election law preventing members of other political parties from voting in another party's primary burdened associational rights and determining that if so the burden was less severe than others the Court had upheld).

Furthermore, as the U.S. Supreme Court has noted, states have important interests in the regulation of elections, including the preservation of political parties as viable and identifiable interest groups, the enhancement of parties' electioneering and party-building efforts, and in maintaining the integrity of elections against party raiding and "sore loser" candidacies by spurned primary contenders. *Id.* at 594. Given that the closed primary system here does not place a heavy burden on Herr's First Amendment rights, the State's regulatory interests justify its restrictions.

## B. Fourteenth Amendment

Herr also argues this system violates the Equal Protection Clause of the Fourteenth Amendment, which states that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Herr challenges the requirement that he must participate in a partisan primary in order to vote for a judicial candidate, while voters in Allen and Vanderburgh Counties are

not subject to partisan primaries for judges. He argues that this is disparate treatment that violates equal protection.

[14] But we see no equal-protection violation here. Herr's argument is premised on the idea that he is similarly situated to voters in other counties. But "there is no rule that counties, as counties, must be treated alike; the Equal Protection Clause relates to equal protection of the laws between persons as such rather than between areas." *Griffin v. Cnty Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 230 (1964). Because Herr is treated the same as other voters in his county, there is no equal-protection issue. *See Citizen Ctr. v. Gessler*, 770 F.3d 900, 918 (10th Cir. 2014) ("[T]he Equal Protection Clause requires only that each county treat similarly situated voters the same.").

[15] Herr has failed to show Tippecanoe's closed primary system for electing judges violates the First or Fourteenth Amendments. The trial court did not err in denying his motion for summary judgment and granting the State's.

## II. Indiana Claims

### A. Article 2, Section 2

[16] Herr also argues the system violates Article 2, Section 2 of the Indiana Constitution, which provides:

> (a) A citizen of the United States, who is at least eighteen (18) years of age and who has been a resident of a precinct thirty (30) days immediately preceding an election may vote in that precinct at the election.

(b) A citizen may not be disenfranchised under subsection (a), if the citizen is entitled to vote in a precinct under subsection (c) or federal law.

(c) The General Assembly may provide that a citizen who ceases to be a resident of a precinct before an election may vote in a precinct where the citizen previously resided if, on the date of the election, the citizen's name appears on the registration rolls for the precinct.

"[V]oting is a fundamental right of all voters who meet the enumerated qualifications" in Article 2, Section 2. *League of Women Voters of Ind., Inc. v. Rokita*, 929 N.E.2d 758, 763 (Ind. 2010). However, the legislature "has power to determine what regulations shall be complied with by a qualified voter in order that his ballot may be counted, so long as [the regulation] is not so grossly unreasonable that compliance therewith is practically impossible." *Simmons v. Byrd*, 136 N.E. 14, 18 (Ind. 1922). In determining whether a voting regulation is constitutional, we look to its "reasonableness and uniformity." *League of Women Voters of Ind.*, 929 N.E.2d at 766. Herr challenges only reasonableness, arguing he is required "to express loyalty to the Republican Party or the Democratic Party as a condition to [his] effective participation in judicial elections" and that this is unreasonable. Appellant's Br. p. 19.

[17] As an initial matter, we disagree with Herr's contention that the closed primary system in Tippecanoe County requires him to express loyalty to the Republican or Democratic Party in order to vote. Primary elections are not limited to Republican or Democratic candidates, but rather to political parties whose

nominee received at least ten percent of the votes cast in the state for secretary of state at the last election, I.C. § 3-10-1-2, although generally only the Republican and Democratic Parties have met this threshold.[3] Furthermore, the statutes do not require an expression of "loyalty." Instead, a voter merely must have voted for the majority of that party's candidates in the last election or intend to do so in the next. *See* I.C. § 3-10-1-6.

[18] The question here is whether that requirement is a reasonable regulation. Our Supreme Court has not had much occasion to address the reasonableness requirement of voting regulations under Article 2, Section 2. However, in *League of Women Voters of Indiana*, the Court addressed the reasonableness of voter-identification requirements. In finding that the voter-identification requirements were reasonable, the Court noted the relatively minor burdens the regulations placed on voters—Indiana law provided that individuals may receive an identification card after providing some basic information—and served a substantial interest of protecting "the integrity and reliability of the electoral process." *League of Women Voters of Ind.*, 929 N.E.2d at 768. This is like the *Anderson* analysis conducted above, and we find the primary system reasonable under Article 2, Section 2 for the same reasons. The burden on voters is low, arguably lower than voter-identification requirements, which

---

[3] "Since at least 1952, only the Republican and Democratic parties have met this threshold." *Common Cause Ind. v. Individual Members of the Ind. Election Comm'n*, 800 F.3d 913, 915 (7th Cir. 2015).

require voters to acquire identification in advance and bring it to the polls, and the system serves a substantial interest in safeguarding primary elections.

[19] The trial court did not err in determining Tippecanoe County's closed primary system does not violate Herr's right to vote under the Indiana Constitution.

## B. Article 1, Section 23

[20] Herr also argues that the primary system violates the Equal Privileges and Immunities Clause found in Article 1, Section 23 of the Indiana Constitution, which provides "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Similar to his equal-protection claim above, Herr argues that voters in Allen and Vanderburgh Counties who participate in non-partisan elections for judges are receiving a privilege not given to him.

[21] Indiana's Equal Privileges and Immunities Clause imposes two requirements:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics [that] distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. In addition, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*League of Women Voters of Ind.,* 929 N.E.2d at 770 (citations omitted). As noted above, Herr has not shown he was treated differently than other similarly situated individuals. He is treated the same as other voters in his county. As

such, there is no Article 1, Section 23 violation. *See Lomont v. State*, 852 N.E.2d 1002, 1008 (Ind. Ct. App. 2006) (rejecting defendant's privileges-and-immunities claim because, while other counties may offer diversion programs, he was treated no differently than other similarly situated offenders in his county).

[22] The trial court did not err in determining the closed primary system in Tippecanoe County does not violate Herr's rights under the Privileges and Immunities Clause of the Indiana Constitution.

Affirmed.

Mathias, J., and Pyle, J., concur.